THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:10cv256

| | |
|---|---|
| CONNEA BOONE on behalf of ) <br> Troy Alexander Bridges, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> MICHAEL J. ASTRUE, ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) <br> _____ | **MEMORANDUM OF** <br> **DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 9], the Defendant's Motion for Summary Judgment [Doc. 12] and Defendant's Amended Motion for Summary Judgment. [Doc. 14].

I.   **PROCEDURAL HISTORY**

The Plaintiff Connea Boone is the mother of Troy Alexander Bridges, a person under the age of 18 at all relevant times. On his behalf, an application was protectively filed for Supplemental Security Income on April 1, 2008 alleging that he had become disabled as of June 1, 1999. [Transcript ("T.") 101]. The Plaintiff's application was denied initially and on reconsideration. [T. 79-82, 86-8]. A hearing was held before Administrative Law Judge ("ALJ")

William Overton on November 14, 2009. [T. 64-76]. There the onset date was amended to April 1, 2008, the protective filing date. [T. 64]. On December 30, 2009, the ALJ issued a decision denying the Plaintiff[1] benefits. [T. 8-17]. The Appeals Council denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 1-3]. The Plaintiff has exhausted her available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards, <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner <u>de novo</u>. <u>Smith v. Schweiker</u>, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined

---

[1] Procedural references to the "Plaintiff" shall indicate Ms. Boone, and substantive references to the "Plaintiff" shall indicate Troy Alexander Bridges.

"substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. THE SEQUENTIAL EVALUATION PROCESS FOR CHILD CLAIMS

In determining whether or not a child claimant is disabled, the ALJ follows a three-step sequential process. The ALJ must determine whether the claimant is currently engaging in substantial gainful activity; whether the claimant has a severe impairment; and whether the impairment meets or equals a listing as set out in the Listings in Part B, Appendix 1 of Subpart P. See 20 C.F.R. § 416.924(a). If, however, an ALJ determines that a claimant's impairments do not meet the severity of any listed impairment, he must then determine whether or not the claimant's impairments result in limitations that

functionally equal the listings, by assessing the degree of functional limitation in six domains of functioning. 20 C.F.R. § 416.926a. The child's impairment(s) must result in "marked" limitations in two domains of functioning or an "severe" limitation in one domain. 20 C.F.R. §416.926a(a). If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); 20 C.F.R. § 416.924(a).

**IV.   FACTS AS STATED IN THE RECORD**

Plaintiff, who was 15 years old at the time of his hearing and attending regular ninth grade classes through an Individualized Education Plan [T. 66], is alleged to be disabled by limitations from mental disorders. [T. 113]. He had previously been in special education classes, took Seroquel, and experienced side effects of weight gain and fatigue. [T. 115, 117, 134]. In applying, his mother stated that he was limited in communication, understanding and using what he learned, physical abilities, social activities and behavior, caring for his needs and safety, and paying attention and sticking with tasks. [T. 121-27]. She also indicated that he had outbursts when he did not get his way, was restless and slept little, and had delusions of having "about 25 wives" and the ability to fly. His mother testified that his

4

impairments appeared at age five when she and his father divorced. [T. 66]. He then began writing upside-down and backward. At the time of application she described him as forgetful, "scraping by" and failing JROTC and another class. [T. 66]. During one of his worst rages she took him to the hospital but upon arrival, he had already calmed down so the hospital sent him home. [T. 72]. Abilify improves his moods and calms his anxiety. [T. 73].

During the years prior to his alleged date of onset, Plaintiff's mood, agitation and visions were well controlled by medications. [T. 149-57]. When he ceased to take Abilify for a period, however, he was suspended from school for violence. [T. 150]. He had no learning disability or diminution of intellectual functioning. His IQ scores were low average to average in late 2007. He performed at grade level. [T. 152, 161]. Sometime after 2005, his mother took him off of his medications (Wellbutrin, Abilify and Concerta) and he did well until 2008. [T. 165]. Shortly before his alleged date of onset, however, he complained to his longstanding primary care physician for the first time about an ongoing problem with inadequate sleep. The doctor recommended cessation of smoking, caffeine, and use of digital devices at night, as well as counseling. [T. 192]. On February 28, 2008 Pamela Lowe-Hoyt, MD of Appalachian Counseling performed a psychological evaluation

5

on Plaintiff. She diagnosed him with cyclic schizophrenia. [T. 165-66]. On March 28, he was "doing well," had "fewer explosive spells," but his home featured "drama" in that DSS and police visited the home concerning his mother's "drunken boyfriend." [T. 164]. In early 2009, he was being referred to attend "specialized instructions" as part of his school curriculum. [T. 247].

Plaintiff had only two visits for treatment of mental impairments between his April 1, 2008 alleged onset date and his hearing. [T. 207, 283]. On August 18, he refused to discuss his issues, which included alleged inappropriate touching of his sister, being removed from his home by DSS due to his mother's neglect, and weight gain as a side effect of Seroquel. [T. 207]. When seen again eight months later, he still had rages, mood swings, and lived in a "largely dysfunctional household." [T. 283].

Four evaluations were performed for Disability Determination Services (DDS) during the claim period. Teachers Rick Rice and Jennifer Green evaluated him on September 4, 2008 and January 13, 2009, respectively. [T. 208-15, 232-39]. Their Forms SSA-5665 rated his performance in various domains on a five-point scale with four being "a serious problem" and five being "a very serious problem." Out of 53 items rated in six functional domains, Mr. Rice rated him at four or five in eight categories. Ms. Green

rated him at four on two criteria, matching the assessment of Mr. Rice in those areas. In addition she rated him at four on pace in the Attending and Completing Tasks domain. [Id.].

Richard S. Gross, Ph.D. completed a Childhood Disability Evaluation of the Plaintiff for DDS on September 25, 2008. [T. 216-21]. He found that schizoaffective disorder, history of Attention Deficit Disorder (ADD), and Oppositional Defiant Disorder were severe impairments. He opined, however, that this combination did not meet a listing or medically equal or functionally equal a listing.

Alan B. Cohen, MD and Brian Grover, Psy.D. completed another Childhood Disability Evaluation of the Plaintiff for DDS on January 14, 2009. [T. 240-45]. They found his severe impairments to be unchanged, and that those impairments did not meet, medically equal or functionally equal a listing.

## V. THE ALJ'S DECISION

On December 30, 2009, the ALJ issued a decision denying the Plaintiff benefits. [T. 8-17]. Proceeding to the sequential evaluation, the ALJ found that from the time of application through the date of decision, Plaintiff was an adolescent under the regulations. [T. 11]. He had not engaged in any substantial gainful activity since April 1, 2008, his application date. [Id.]. The

ALJ then determined the following severe impairments: bipolar disorder with history of attention deficit hyperactivity disorder. [Id.]. The ALJ concluded that his impairments did not meet, medically equal, or functionally equal a listing. [T. 12]. He made the following findings about limitations in the six functional equivalence domains: less than marked limitations in acquiring and using information, attending and completing tasks, interacting and relating with others, health and physical well being, and ability to care for himself; and no limitation in moving about and manipulating objects. [T. 16]. Accordingly, the ALJ concluded that the Plaintiff was not disabled from the alleged onset date of April 1, 2008 through the date of his decision. [T. 18].

## VI. DISCUSSION

Plaintiff does not articulate any assignments of error in his motion or his brief. Instead, he merely recites from various portions of the evidence. Plaintiff's argument, in substance, seeks for this Court to find facts different from those found by the ALJ, as though this Court were to undertake a de novo factual determination. Attempting to ferret a legal argument from Plaintiff's filing, Defendant interprets Plaintiff's recitations as an assertion that the ALJ erred in finding limitations in the six functional domains that were less restrictive than the evidence might otherwise support. [Doc. 15 at 11]. Plaintiff

8

has not indicated anything to the contrary; therefore the Court will evaluate the decision for any error in the ALJ's assessment of whether Plaintiff's limitations functionally equal a listing.[2]

In his brief, Plaintiff recounts much of the testimony of his mother, as well as Gerald Travis, M.D. and psychiatrist Pamela Lowe-Hoyte, and cites to the teacher evaluation forms that have been submitted. He then proceeds to argue that he has greater limitations in the six functional domains than the ALJ found.

The separate sequential evaluation process for child claimants has, as its final step, the functional equivalence assessment. Put simply, a child's abilities are compared with the level of functioning expected from an unimpaired child of his age. 20 C.F.R. § 416.924a(b)(3)(i). All evidence of record must be considered. 20 C.F.R. § 416.924a(a). The "whole child" must be evaluated. SSR 09-1p. Plaintiff's age classification is adolescent (i.e. between his twelfth and eighteenth birthdays). 20 C.F.R. § 416.926a. The regulations establish six "functional domains." The limitations that result from a child's impairments must be evaluated against those domains. 20 C.F.R.

---

[2] Two Motions for Receipt of New and Material Evidence [Docs. 10, 16] filed by Plaintiff have been considered and denied in a separate order of this Court. [Doc. 18]. Accordingly, such other evidence, consisting of the opinion of Dr. Mindy Pardoll, will not be considered in this opinion.

§ 416.924a(b)(1)(i-vi). In that evaluation, unless at least two domains of the child's limitations are "marked" or at least one domain is "severe," the child's limitations cannot be found to functionally equal a Listing. 20 C.F.R. § 416.924a(a).

The ALJ explained his evaluation of Plaintiff's evidence about functional equivalence. Specifically, he stated that he

> evaluated the "whole child,". . . how the child functions in all settings and at all times, as compared to [non-impaired peers], . . .the interactive and cumulative effects of all of the claimant's medically determinable impairment(s), . . .[and] the type, extent, and frequency of help the claimant needs to function.

[T. 12-13]. In doing this, the ALJ considered opinion evidence, pursuant to 20 C.F.R. § 416.927 and SSRs 96-2p, 96-Sp, 96-6p and 06-3p. Plaintiff makes no complaint about the ALJ's consideration of the opinion evidence of record or the assessment of the weight to be attributed to such opinions.

The ALJ next assessed Plaintiff's symptoms in the manner required by 20 C.F.R. § 416.929:

> In terms of the claimant's alleged hallucinations, the medical evidence indicates the claimant's symptoms improve and he does well when compliant with treatment and prescribed medication.

[T. 13]. The ALJ's observation in this regard is consistent with the evidence in the record. In their January 2009 assessment, Drs. Cohen and Grover found that Plaintiff's allegations of past problems were only partially credible. [T. 245]. The current objective examinations, however, were largely normal, and they found that any inconsistency therein was explained by Plaintiff's periods of non-compliance with treatment. [Id.; T. 12]. Plaintiff's fact-based argument focuses on the more serious symptoms, but ignores the evidence of the periods of non-compliance and how they effected his symptoms. Thus, Plaintiff has failed to demonstrate disabling limitations. The ALJ's findings are supported by substantial evidence.

The record demonstrates that Plaintiff's and his mother's non-compliance with medical instructions were frequently the trigger for spikes in limitations that stem from his impairments. His mother took him off his prescribed medications on at least two occasions. [T. 150, 165]. When he was on his medications, she admitted he had no hallucinations ("visions") and did well. [T. 149, 150, 152]. His mother maintained an unstable environment for him, and he smoked and used caffeine, a stimulant, all against medical advice. [T. 192, 207, 272, 283, 268]. He obtained counseling only twice during the claim period, in spite of recommendations for routine counseling.

11

[T. 192]. Dr. Lowe-Hoyt's statement about Plaintiff's absenting himself for a long "hiatus" in treatment [T. 283] belies Plaintiff's bare assertion that mental health services were unavailable. The inadequacy of efforts to obtain, and comply with, treatment are permissible credibility considerations. McKenney v. Apfel, 38 F.Supp.2d 1249, 1259 (D.Kan. 1999)(citing Hargis v. Sullivan, 945 F.2d 1482, 1490 (10th Cir. 1991)). No error appears in the ALJ's assessment of Plaintiff's symptoms.

For each of the ALJ's findings of "less than marked" limitations in a functional realm, he cites to adequate support therefor. The State Agency opinions and teacher evaluations all demonstrate less than marked limitations. Plaintiff points to no credible contrary evidence.

For the foregoing reasons, the Court concludes that the ALJ applied the correct legal standards, and that there is substantial evidence to support the ALJ's finding of no disability through the date of his decision.

## O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Defendant's Motion and Amended Motion for Summary Judgment [Docs. 12, 14] are **GRANTED**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 9] is **DENIED**.

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: November 7, 2011

Martin Reidinger
United States District Judge